## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TD BANK, N.A.,                    )
                                  )
                Plaintiff,        )
                                  )
v.                                )        1:14-CV-852
                                  )
SHREE DUTT SAI, LLC,              )
SHAILESH GANDHI, TANVI            )
JADIA, and MAMTA SHAH,            )
                                  )
                Defendants.       )

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (the "Motion") (Docket Entry 22). For the reasons that follow, the Court will grant the Motion.

### I. BACKGROUND

#### A. Procedural History

Plaintiff initiated this action, under the Court's diversity jurisdiction, to recover money owed on two promissory notes (the "Notes") (Docket Entries 1-2, 1-6) and related guaranty agreements (the "Guaranties") (Docket Entries 1-3, 1-7). Defendants' Answer admits that Shree Dutt Sai, LLC (the "Corporate Defendant") executed the Notes and that Shailesh Gandhi, Tanvi Jadia, and Mamta Shah (the "Guarantor Defendants," and collectively with Corporate Defendant, the "Defendants") executed the Guaranties. (Docket Entry 16, ¶¶ 9, 11-13, 33, 37-39.) After Plaintiff and Defendants consented to proceed before a United States Magistrate Judge for

all proceedings, including entry of judgment (Docket Entry 18 at 3), this action was referred to the undersigned United States Magistrate Judge (Docket Entry 19). Plaintiff moved for summary judgment. (Docket Entry 22.) Defendants instructed their counsel not to respond. (Docket Entry 25 at 2.) Therefore, for purposes of evaluating the Motion, the factual record consists of the exhibits in support of the Complaint (Docket Entries 1-2 through 1-7) and the exhibits in support of the Motion (Docket Entries 24 and 24-1 through 24-3).

## B. Facts

Corporate Defendant borrowed two million dollars from Commerce Bank, N.A. ("Commerce Bank") through a U.S. Small Business Administration Note (the "SBA Note"). (Docket Entry 1-2; Docket Entry 16, ¶ 9 (admitting execution of SBA Note).)[1] The SBA Note provides that, in the event of default for failing to make the required monthly payment, Corporate Defendant bears responsibility for immediately paying all amounts owing, including the reasonable attorney's fees and costs associated with enforcing the SBA Note. (Docket Entry 1-2 at 3.) Through their U.S. Small Business Administration Unconditional Guarantee(s) (the "SBA Guarantees"), Guarantor Defendants each "unconditionally guarantee[d] payment to [Commerce Bank] of all amounts owing under the [SBA] Note,"

---

[1] TD Banknorth, N.A. and Commerce Bank, N.A. subsequently merged, with Plaintiff as the surviving corporation. (Docket Entry 1-4 at 1-2; see also Docket Entry 1, ¶¶ 16-18.)

including attorney's fees and costs associated with enforcing the SBA Guarantees. (Docket Entry 1-3 at 1, 3, 7, 9, 14, 16; <u>see also</u> Docket Entry 16, ¶¶ 11-13 (admitting execution of SBA Guarantees).)

In addition, Corporate Defendant borrowed an additional $670,000.00 from Commerce Bank through a Loan Agreement and related Term Note (the "Term Note"). (Docket Entries 1-5, 1-6; <u>see also</u> Docket Entry 16, ¶¶ 33, 35 (admitting execution of Loan Agreement and Term Note).) The Term Note provides that, in the event of default, Corporate Defendant bears responsibility for immediately paying all amounts owing under the Term Note, as well as the costs of collection, including reasonable attorney's fees and expenses to the extent permitted by applicable law. (Docket Entry 1-6 at 1, 3.) Guarantor Defendants each executed an "Unlimited Guaranty" wherein they "absolutely, unconditionally and irrevocably guarantee[d] the full and punctual payment to [Commerce Bank] of all sums" owing under the Term Note, including attorney's fees (collectively, the "Term Guaranties"). (Docket Entry 1-7 at 1, 7, 12; <u>see also</u> Docket Entry 16, ¶¶ 37-39 (admitting execution of Term Guaranties).) As security for the Notes, Corporate Defendant executed and delivered a deed of trust to certain real property in Durham County (the "Deed of Trust"). (<u>See</u> Docket Entry 24, ¶¶ 13, 45; Docket Entry 16, ¶ 15 (admitting execution of Deed of Trust); <u>see also</u> Docket Entry 24-3.)

Corporate Defendant defaulted on the Notes by failing to make the required monthly payments. (Docket Entry 24, ¶¶ 17, 46; see also Docket Entry 24-1.) Plaintiff notified Defendants in writing of this default, acceleration of the Notes, their obligation to make payment in full within five days, and Plaintiff's intent to enforce the attorney's fees provisions in the Notes and Guaranties unless Defendants made timely payment. (Docket Entry 24-1.)

Defendants continued to make payments on the Notes, but failed to pay the full amount due within the five-day period. (Docket Entry 24, ¶ 23.) Accordingly, Plaintiff initiated a foreclosure proceeding on the real property described in the Deed of Trust. (Id. ¶ 24.) Through a public sale that included a series of upset bids, the property sold for $1,580,158.13. (Docket Entry 24-2; see also Docket Entry 24, ¶ 27.) Plaintiff deducted its foreclosure expenses from the proceeds of the sale and applied $1,185,118.60 to the SBA Note's outstanding balance and $395,039.53 to the Term Note's outstanding balance. (Docket Entry 24, ¶¶ 32, 50.) As of October 7, 2014, the remaining principal-and-interest balance of the SBA Note was $788,258.48 plus interest at the rate of $77.60 per day (see id. ¶ 34), and the remaining principal-and-interest balance of the Term Note was $345,714.80 plus interest at the rate of $59.51 per day (see id. ¶ 51).

## II. DISCUSSION

### A. Summary Judgment Standard

"[I]n considering a motion for summary judgment, the district court '*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis in original). As the movant, Plaintiff bears the initial burden of showing "the absence of a genuine issue concerning any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). When a movant provides evidentiary support for a summary judgment motion, the nonmoving party generally needs to come forth with some opposing evidence. See Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994). Rule 56(e) of the Federal Rules of Civil Procedure (the "Rules") permits the nonmoving party to oppose a summary judgment motion "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(c) (listing items for court to consider). "While the non-moving party runs a great risk by not responding, such positive action is not required in all instances[,]" because the Court may grant the motion only if the "record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any

circumstances." <u>Campbell</u>, 21 F.3d at 55 (quotation marks omitted). Additionally, in evaluating a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

**B. Analysis**

As a federal court sitting in diversity, the Court "must apply the substantive law of the forum state in resolving the parties' dispute, including the forum state's choice-of-law rules. According to North Carolina's choice-of-law rules, in a breach of contract case the law of the state where the contract was made governs issues of contract construction." <u>Wheels Sports Grp., Inc. v. Solar Commc'ns, Inc.</u>, 194 F.R.D. 527, 534 (M.D.N.C. 1999) (citations omitted); <u>see also</u> <u>Tanglewood Land Co., Inc. v. Wood</u>, 40 N.C. App. 133, 136-37, 252 S.E.2d 546, 550 (1979) ("[M]atters bearing upon the execution, interpretation, and the validity of a contract are determined by the law of the place where it is made.").[2]

---

[2] Federal law governs the SBA Note and SBA Guarantees when the U.S. Small Business Administration is the "holder" of the SBA Note. (Docket Entry 1-2 at 4; Docket Entry 1-3 at 2, 8, 15.) Per the Complaint, however, Plaintiff is now the "owner and holder of the SBA Note." (Docket Entry 1, ¶ 18; <u>see also</u> Docket Entry 24, ¶ 4 (verifying Complaint).)

The SBA Guarantees were executed in North Carolina. (See Docket Entry 1-3 at 6, 12, 19 (notarized signatures executed in Guilford County, North Carolina).) Per their notarized signatures, Defendants also executed the Term Note and Term Guaranties in North Carolina. (Docket Entry 1-6 at 6-7; Docket Entry 1-7 at 5, 11, 16.) The same individuals executed the SBA Note on the same day as the SBA Guarantees, the Term Note, and the Term Guaranties. (See Docket Entry 1-2 at 6; Docket Entry 1-3 at 6, 12, 19; Docket Entry 1-6 at 6-7; Docket Entry 1-7 at 5, 11, 16.) Plaintiff maintains, without challenge by Defendants, that, "[a]ccording to their place of execution . . ., the Notes . . . are governed by North Carolina law." (Docket Entry 23 at 7-8.) In these circumstances, the Court finds that the SBA Note was executed in North Carolina, such that, for purposes of this matter, North Carolina law governs. See Wheels Sports Grp., 194 F.R.D. at 534 (recognizing North Carolina's place-of-execution rule and applying North Carolina law where parties made their arguments under North Carolina law without suggesting application of another forum's laws).

Coordinately, the Term Note and Term Guaranties contain North Carolina choice of law provisions. (Docket Entry 1-6 at 4 ("This [Term] Note . . . shall be governed by the laws of the State of North Carolina without giving effect to the conflicts of laws principles thereof."); 1-7 at 4, 10, 15 ("This [Term] Guaranty, all acts and transactions hereunder, and the rights and obligations of

7

the parties hereto shall be governed, construed and interpreted according to the laws of the State of North Carolina without giving effect to the conflicts of laws principles.").) These choice of law provisions are valid under North Carolina law. See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 603 (4th Cir. 2004) ("[C]ontracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect."). Accordingly, North Carolina law governs as to the Term Note and Term Guaranties.

In North Carolina, "[w]hen the language of a written contract is plain and unambiguous, the contract must be interpreted as written and the parties are bound by its terms." Atlantic & E. Carolina Ry. Co. v. Wheatley Oil Co., 163 N.C. App. 748, 752, 594 S.E.2d 425, 429 (2004). Moreover, the parties' intent is a legal question for the court to decide. Shelton v. Duke Univ. Health Sys., Inc., 179 N.C. App. 120, 123, 633 S.E.2d 113, 115 (2006) ("When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." (internal quotations marks omitted)).

Further, North Carolina defines a guaranty as "a promise to answer for the payment of some debt, or the performance of some

duty, in case of the failure of another person who is himself liable in the first instance for such payment or performance." O'Grady v. First Union Nat'l Bank, 296 N.C. 212, 220, 250 S.E.2d 587, 593 (1978).  Put another way:

> A guarantor's liability arises at the time of the default of the principal debtor on the obligation or obligations which the guaranty covers.  A guaranty of payment is an absolute promise by the guarantor to pay a debt at maturity if it is not paid by the principal debtor.  This obligation is independent of the obligation of the principal debtor, and the creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt at maturity.

Gillespie v. DeWitt, 53 N.C. App. 252, 258, 280 S.E.2d 736, 741 (1981) (internal quotation marks and citations omitted).

## 1. The Notes and Guaranties

Here, the Notes and Guaranties are unambiguous, making them ripe for judicial interpretation.  Plaintiff has met its initial burden of showing the absence of a genuine issue of material fact. It is undisputed that Corporate Defendant defaulted on the Notes by failing to make full and timely payments.  (Docket Entry 24, ¶¶ 17, 46.)  Moreover, Corporate Defendant admittedly executed the Notes (Docket Entry 16, ¶¶ 9, 33), making it responsible for repaying the borrowed amounts.  Likewise, Guarantor Defendants admittedly executed the Guaranties (id. ¶¶ 11-13, 37-39), making them personally liable to Plaintiff for the borrowed amounts. Guarantor Defendants' signatures appear on the Notes and Guaranties (see Docket Entries 1-2, 1-3, 1-6, 1-7), and a notary public attested to

the validity of the signatures on the Term Note and Guaranties (see Docket Entries 1-3, 1-6, 1-7).

On this record, the Court finds that the Notes and Guaranties were properly executed and are valid. Under the terms of the Notes and Guaranties, Defendants are jointly and severally liable for the borrowed amounts. (See Docket Entry 1-2 at 1 (SBA Note stating: "In return for the Loan, [Corporate Defendant] promises to pay to the order of [Commerce Bank] the amount of Two Million Dollars and Zero Cents . . . and all other amounts required by th[e] [SBA] Note."); Docket Entry 1-3 at 1, 3, 7, 9, 14, 16 (SBA Guarantees stating: "Guarantor [Defendant] unconditionally guarantees payment to [Commerce Bank] of all amounts owing under the [SBA] Note." "All individuals and entities signing [the SBA Guarantee] as Guarantor are jointly and severally liable."); Docket Entry 1-6 at 3 (Term Note stating: "The liabilities of the Borrower and any endorser or guarantor of this [Term] Note are joint and several."); Docket Entry 1-7 at 1, 7, 12 (Term Guaranties stating: "Guarantor [Defendant] absolutely, unconditionally and irrevocably guarantees the full and punctual payment to [Commerce Bank] of all sums . . . due . . . to [Commerce Bank]." "Guarantor [Defendant] . . . agrees . . . that the liability of the Guarantor [Defendant] is unlimited and shall be joint and several with the liabilities of any other [Guarantor Defendants].").)

Regarding the Notes' outstanding balances, Plaintiff provided an affidavit from a person with knowledge thereof, giving a detailed description of the original amounts borrowed, payments made, interest accrued, and deficiency balances. (Docket Entry 24.) Defendants contest neither the accuracy of Plaintiff's calculations nor the interest rates or fees applied. Upon careful review, the Court finds that the outstanding balance on the SBA Note was $788,336.08 as of the date Plaintiff filed this action and $806,416.88 as of May 29, 2015. (See Docket Entry 24, ¶¶ 34-35; Docket Entry 22 at 2-3.) For the Term Note, the respective amounts were $345,774.31 and $359,640.14. (See Docket Entry 24, ¶¶ 51, 55; Docket Entry 22 at 3.)

## 2. Attorney's Fees

Pursuant to North Carolina General Statute Section 6-21.2, Plaintiff also seeks attorney's fees from Defendants. (Docket Entry 22 at 2.) Specifically, Plaintiff requests attorney's fees totaling 15% of the outstanding indebtedness on the Notes as of the date it filed this lawsuit. (Docket Entry 23 at 11-12.)

The relevant portions of Section 6-21.2 provide:

> Obligations to pay attorneys' fees upon any note . . . or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions
>
> . . .

11

(2) If such note . . . or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

(3) As to notes and other writing(s) evidencing an indebtedness arising out of a loan of money to the debtor, the "outstanding balance" shall mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.

. . .

(5) The holder of an unsecured note or other writing(s) evidencing an unsecured debt, and/or the holder of a note and chattel mortgage or other security agreement and/or the holder of a conditional sale contract or any other such security agreement which evidences both a monetary obligation and a security interest in or a lease of specific goods, or his attorney at law, shall, after maturity of the obligation by default or otherwise, notify the maker, debtor, account debtor, endorser or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation has five days from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees. If such party shall pay the "outstanding balance" in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions.

N.C. Gen. Stat. § 6-21.2; see also Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc., 143 N.C. App. 1, 12, 545 S.E.2d 745, 752 (2001) ("[S]ection 6-21.2 allows (1) the party owed the debt (2) to recover attorney's fees (3) after the debt has matured (4) provided it is written in the note, conditional sale contract, or other evidence of indebtedness.").

This statute "represents a far-reaching exception to the well-established rule against attorney's fees obligations, and specifically approves of an obligation to pay reasonable attorneys' fees found in any note or other evidence of indebtedness." Carter v. Foster, 103 N.C. App. 110, 114, 404 S.E.2d 484, 487 (1991) (internal quotation marks and citation omitted). North Carolina courts have described the statute as remedial in nature, such that it "should be construed liberally; narrow constructions are to be avoided." Coastal Prod. Credit Ass'n v. Goodson Farms, Inc., 70 N.C. App. 221, 227, 319 S.E.2d 650, 655 (1984) (citation omitted). Generally, "[w]hen the trial court determines an award of attorney fees is appropriate under [Section 6-21.2], the amount of attorney fees awarded lies within the discretion of the trial court." Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc., 178 N.C. App. 535, 541, 632 S.E.2d 192, 197 (2006).

Here, the SBA Note and Term Note both provide for "reasonable attorney's fees." (See Docket Entry 1-2 at 3; Docket Entry 1-6 at 3.) Additionally, the Guaranties provide for attorney's fees and hold the Guarantors liable for all amounts due under the Notes. (See Docket Entry 1-3 at 1, 3; Docket Entry 1-7 at 1.) In compliance with N.C. Gen. Stat. § 6-21.2(5), Plaintiff properly notified Defendants of (1) their default under the Notes; (2) the balances due and owing under the Notes; (3) Plaintiff's intention to recover reasonable attorney's fees; and (4) Defendants' ability

13

to avoid paying attorney's fees by paying the Notes' outstanding balances within five days. (Docket Entry 24-1; see also Docket Entry 1, ¶ 21, 44.) Because the Notes and Guaranties do not specify a percentage of the outstanding balance Plaintiff would collect in "reasonable attorneys' fees" (see Docket Entries 1-2, 1-3, 1-6, 1-7), Section 6-21.2(2) authorizes Plaintiff to recover 15% of the "outstanding balance" due on the Notes when Plaintiff initiated this action. See N.C. Gen. Stat. § 6-21.2(2)-(3).[3]

As of October 8, 2014, the date Plaintiff filed this action, $788,336.08 remained owing on the SBA Note and $345,774.31 remained owing on the Term Note. (Docket Entry 24, ¶¶ 34, 51.) Plaintiff is entitled to recover $118,250.41 in reasonable attorney's fees on the SBA Note (15% of $788,336.08) and $51,866.15 in reasonable attorney's fees on the Term Note (15% of $345,774.31). (See Docket

---

[3] Courts have questioned whether Section 6-21.2(2) mandates an award of 15% of the "outstanding balance" as attorney's fees or whether the statute, instead, serves as a cap on such fees. Monsanto Co. v. ARE-108 Alexander Rd., LLC, No. 1:10CV898, 2013 WL 3280265, at * 1 (M.D.N.C. Jun. 27, 2013) (unpublished). The North Carolina Court of Appeals most recently addressed this issue in In re 375,757.47, ___ N.C. App. ___, 771 S.E.2d 800 (2015), concluding that 15% of the outstanding balance represents the proper award of attorney's fees under Section 6-21.2(2). Id. at ___, 771 S.E.2d at 808. Moreover, the North Carolina Court of Appeals has held that even language in contract documents referring to attorney's fees "incurred" does not alter the applicability of the 15% figure. See Trull v. Central Carolina Bank & Trust, 124 N.C. App., 486, 493-94, 478 S.E.2d 39, 44 (1996); see also Baker & Taylor, Inc. v. Griffin, No. 3:12CV553-MOC, 2015 WL 1307293, at *1 (W.D.N.C. Mar. 23, 2015) (unpublished) (following Trull on that point), appeal filed, No. 15-1433 (4th Cir. Apr. 23, 2015).

Entry 22 at 2-3.)[4]  Corporate Defendant and Guarantor Defendants are each jointly and severally liable for the attorney's fee award. See <u>RC Assocs. v. Regency Ventures, Inc.</u>, 111 N.C. App. 367, 374, 432 S.E.2d 394, 398 (1993) (holding that, where "[t]he language in the guaranty contract is sufficient to put a guarantor on notice that he will be liable for attorney's fees if he fails to make the guaranteed payment," the guarantor and borrower are "jointly and severally liable for the award of attorney's fees [under section 6-21.2(2)]").

### III. CONCLUSION

Plaintiff has established, as a matter of law, Defendants' liability for the outstanding balances on the Notes, and Defendants' liability for attorney's fees under Section 6-21.2(2).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Docket Entry 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants are jointly and severally liable to Plaintiff on the SBA Note, for the sum of $806,416.88 plus interest at the rate of $77.60 per day, from and

---

[4] Plaintiff calculates attorney's fees on the Term Note at $51,901.85. (Docket Entry 22 at 3.) As of October 7, 2014, the deficiency balance on the Term Note was $345,714.80 with interest accruing at the rate of $59.51 per day. (Docket Entry 24, ¶ 51.) On October 8, 2014, the deficiency balance on the Term Note was, therefore, $345,774.31 ($345,714.80 plus $59.51), not $346,012.35 as Plaintiff calculated (<u>see</u> Docket Entry 22 at 3), making the proper award of attorney's fees on the Term Note $51,866.15 (i.e., 15% of $345,774.31).

after May 29, 2015, until date of entry of Judgment and, thereafter, at the legal rate until paid in full.

**IT IS FURTHER ORDERED** that Defendants are jointly and severally liable to Plaintiff on the Term Note, for the sum of $359,640.14 plus interest at the rate of $59.51 per day, from and after May 29, 2015, until date of entry of Judgment and, thereafter, at the legal rate until paid in full.

**IT IS FURTHER ORDERED** that Defendants are jointly and severally liable to Plaintiff on the SBA Note and SBA Guarantee for $118,250.41 in attorney's fees.

**IT IS FURTHER ORDERED** that Defendants are jointly and severally liable to Plaintiff on the Term Note and Term Guaranty for $51,866.15 in attorney's fees.


      /s/ L. Patrick Auld
      **L. Patrick Auld**
    **United States Magistrate Judge**

November  18 , 2015

16